IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATHER A. MACDOUGALL,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     CIVIL ACTION NO. 24-CV-0989 |
| BRIAN RHULING, SR., *et al.*,<br>    Defendants. | :<br>:<br>: |

## MEMORANDUM

**MARSTON, J.**                                                                                         August 28, 2024

In this civil action, Plaintiff Heather A. MacDougall raises claims stemming from her prior employment with The Buck Hotel in Feasterville, Pennsylvania. The Court previously dismissed MacDougall's claims due to her failure to comply with Federal Rule of Civil Procedure 8 but permitted her leave to file an amended complaint (Doc. Nos. 9, 10), which she has done (Doc. No. 11). For the following reasons, the Court will dismiss MacDougall's Amended Complaint and give her one more opportunity to amend.

**I.      BACKGROUND**[1]

On March 6, 2024, MacDougall initiated this lawsuit by filing 192 pages of miscellaneous and duplicative exhibits, several of which contain her handwritten notes. (Doc. No. 1.) Shortly thereafter, through two separate filings, MacDougall submitted four separate form complaints. (Doc. Nos. 3, 4.) While it was apparent that MacDougall intended to bring forth employment discrimination claims against The Buck Hotel, Brian Rhuling, Sr. and Brian Ruling, Jr., her voluminous filings failed to provide "a clear narrative of the events at issue" and "the specific contours of [her] claims, who she [brought] each claim against, and what each

---

[1] The following allegations are taken from MacDougall's filings. The Court adopts the pagination supplied to those filings by the CM/ECF docketing system.

defendant [was] alleged to have done with regard to each claim [was] unclear, even under a liberal construction of [her] submissions." (Doc. No. 9 at 1, 7.) The Court thus dismissed MacDougall's Complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 8. (*Id*.) The Court permitted MacDougall to file an Amended Complaint, instructing her to clearly articulate the basis for her claims against each Defendant without relying exclusively on exhibits. (*Id.* at 7 ("If MacDougall wishes to proceed with her case against The Buck Hotel, Brian Rhuling Sr., and Brian Rhuling Jr., she must file one comprehensive complaint containing a coherent articulation of facts set forth in numbered paragraphs explaining what each Defendant did or did not do that allegedly caused her injury, and an organized list of claims she intends to bring based on those events.").)

On June 14, 2024, MacDougall's timely filed her Amended Complaint, which is comprised of several documents and exhibits submitted together in one filing, in no particular order. (Doc. No. 11.) It appears from these filings that MacDougall intends to bring forward gender, disability, and familial status discrimination claims as well as a variety of state law tort claims against The Buck Hotel, Brian Rhuling Sr., and Brian Rhuling Jr. (*Id.*) However, given the scattered and confused nature of her filing, the Court cannot discern a clear narrative of the facts and finds it most fruitful to provide an overview of each document contained in MacDougall's Amended Complaint.

The first page of MacDougall's filing is a one-page "civil complaint" form for use in state courts, which reflects her intent to sue The Buck Hotel, Brian Rhuling Sr., and Brian Rhuling Jr. for $400,000 in damages. (*Id.*) MacDougall did not include any factual allegations or claims in this form complaint. (*Id.*)

The second document provided by MacDougall purports to be an accounting of the $400,000 in damages allegedly owed to MacDougall by Defendants and several other individuals who are not named as defendants for matters including discrimination based on MacDougall's gender and status as a single mother, wrongful termination, Defendants disqualifying her from unemployment, issues with her landlord, "car vandalism," "car injury connected to auto insurance policy fraud," and "lost income from stalker."  (Doc. No. 11-1 (capitalization omitted)).)  The document attributes some of MacDougall's harm to her prior landlord and his stepson, an insurance agent who was allegedly friends with Brian Rhuling Jr., and MacDougall's "Ex's Attorney."  (Doc. No. 11-1 at 2, 4.)

The third document filed as a part of the Amended Complaint reflects MacDougall's intention to sue The Buck Hotel, Brian Rhuling Sr. (identified as the Owner), and Brian Rhuling Jr. (identified as the Manager) for discrimination based on her gender, disability, and family status ("Single Mother – Head of Household – Two Dependents").  (Doc. No. 11-2 at 1.) MacDougall's allegations on this front are far reaching and disconnected.  In particular, it appears that MacDougall raises the following nine claims against Defendants:

- First, MacDougall alleges that Brian Rhuling, Sr. terminated her "for absolutely no good reason," apparently based on a false accusation that she was "giving away free beers" to a table that was not hers.  (*Id.*)

- Second, MacDougall alleges that she had a different computer system from the "males" she worked with, that someone else was cashing out sodas on her computer, and that once in a while she was "forced to multi-task to give exceptional customer service," causing delays in ringing items into the system. (*Id.* at 2.)

- Third, MacDougall alleges that she was discriminated against when Brian Rhuling, Jr. refused to check the camera system to help her determine who vandalized her car that was parked in The Buck Hotel parking lot.  (*Id.*)  When MacDougall asked for the cameras to be checked, Rhuling, Jr. replied that there were "[n]o cameras back there," even though MacDougall alleges that there are in fact cameras in the area and that she is "positive if one of the guys were to ask

him to check the camera footage he would have been more likely to help them!" (*Id.*)

- Fourth, MacDougall claims she endured a "stalker intruder." (*Id.* at 3.) Her allegations regarding the stalker are opaque but suggest that she or others have or had a restraining order against this individual, that he apparently visited The Buck Hotel, and that Brian Rhuling Jr. refused to remove him when she asked. (*Id.*) MacDougall alleges that she is "[i]nterested in following through with Restraining Order again to guarantee he leaves [her] relationship and work endeavors alone!" (*Id.*)

- Fifth, MacDougall alleges that Defendants "unethically disqualified [her from] unemployment multiple times," although she provides no allegations explaining what Defendants did. (*Id.*)

- Sixth, MacDougall contends that The Buck Hotel has engaged in what she refers to as "churning (bullying)"—apparently a term for speaking about her to clients in what she believes is an untruthful or unfavorable manner. (*Id.* at 3–4.) She claims these statements have damaged her reputation and prevented her from finding an attorney to represent her. (*Id.* at 3–4.)

- Seventh, she claims Defendants would not provide her with her "financial history" when requested, apparently in reference to their refusal to provide her copies of her paystubs. (*Id.* at 4.)

- Eighth, she claims that The Buck Hotel permitted a false rumor to circulate that she was dating an older man who she was in fact helping because he was "dying from emphysema and sleep apnea." (*Id.* at 4.)

- Ninth, she alleges that Brian Rhuling Sr. called her "lazy" when she looked at the television briefly while working a shift after undergoing a surgery that required her to be careful and not lift anything heavy. (*Id.* at 5.)

In this document, MacDougall also lists "Additional Discriminating Partie(s)," where she identifies other issues she has had with individuals who the owners of The Buck Hotel are friendly with. (*Id.*) This includes a landlord/tenant dispute with "Joe Kelly and Daniel Kelly" of "JMJM Inc.," a car insurance dispute with "Mike Tienary" of SafeCo Auto Insurance, and a dispute with "Eric McGee" who she describes as a "Custodial Party" that was involved with her family hardships. (*Id.*) MacDougall contends she experienced "additional injury" due to

defamation, slander, libel, discrimination, "ethnic intimidation," and "Hate/Envy/Parental Alienation." (*Id.*)

The fourth document MacDougall submitted purports to be an explanation of her discrimination claims in which reiterates the issues discussed in her third document. Specifically, she writes:

> Wrongful Termination (false accusation) – Pain & Suffering (stalker, landlord problems, car, defamation), Financial & Family Hardships (custody issues), Refused to remove Stalker (intruder with Restraining Orders), refused to send over Pay Stubs (Asked kindly by email), refused to check camera footage after endangering car vandalism (Paid Out-Of-Pocket – Someone slashed tires with blades & vindictively shoved windshield wiper blades into hood during storm in The Buck Hotel Parking Lot), POS Gender Discrimination (computer system differed from guys I worked with), Referred to as "Dumb Blonde" in front of customers, Demotion, Treated differently than the 4 guys I worked with for years!

(Doc. No. 11-3 at 1.)

The fifth document submitted as a part of the Amended Complaint is a completed form complaint for a plaintiff raising employment discrimination claims. (Doc. No. 11-4.) In this document, MacDougall confirms her desire to sue The Buck Hotel, Brian Rhuling Sr., and Brian Rhuling Jr. for discrimination related to her former employment as a server.[2] (Doc. No. 11-4 at 5, 8-11.) By checking the appropriate locations on the form complaint, and consistent with her other documents, MacDougall indicates that she brings claims for gender discrimination pursuant to Title VII, disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), and discrimination based on family status and disability pursuant to the Pennsylvania Human Relations Act ("PHRA"). (*Id.* at 5.) She contends that the Defendants unlawfully terminated her, failed to promote her, failed to accommodate her ADHD, failed to stop harassment, subjected her to unequal terms and conditions of employment, retaliated against her, and caused

---

[2] MacDougall also included a copy of the Court's prior order as part of her submission, which was not necessary. (Doc. No. 11-4 at 2–4.)

5

her other harm in the form of an "unwillingness to remove stalker intruder, provide pay stubs or financial records, or check camera footage to verify car vandalism." (*Id.* at 8–9.) She requests monetary relief and for Defendants to refrain from "causing additional hardships" with her family and finances. (*Id.* at 11.)

Finally, MacDougall submitted a variety of exhibits that appear unrelated to her claims discussed above. In particular, she attaches documents pertaining to her car insurance dispute in which she claims an additional unauthorized driver was added to her policy (Doc. No. 11-5 at 1–6, 11–13), pertaining to a domestic relations case and landlord/tenant case in Bucks County, (*id.* at 7, 14, 17; Doc. No. 11-6), and illustrating allegedly fraudulent activity pertaining to her credit cards, her credit report, and matters with her landlord (Doc. No. 11-5 at 8–10, 15–16, 18–20).[3]

## II.   STANDARD OF REVIEW

Since MacDougall is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss her Amended Complaint if it fails to state a claim. This analysis is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015). Thus, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotation marks omitted). This means a plaintiff in an employment discrimination case must put forth allegations that "raise a reasonable expectation

---

[3] On August 19, 2024, two months after filing her Amended Complaint, MacDougall submitted a litany of additional exhibits to the docket. (Doc. No. 12.) As discussed later in this memorandum, these exhibits are largely duplicative of other exhibits MacDougall already filed in this matter and do not add any substance to her claims. *See infra* at p. 20 n.10.

that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotation marks omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As MacDougall is proceeding *pro se*, the Court construes her allegations liberally, and will "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). Thus, "[a]t this early stage of the litigation, [the Court will] accept the facts alleged in [the pro se] complaint as true, draw all reasonable inferences in [the plaintiff's] favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (alterations accepted and internal quotation marks omitted). However, 'pro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F. 3d at 245). And an unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement of the claim showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). In determining whether a pleading meets Rule 8's "short and plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). A pleading may still satisfy the "plain" statement requirement "even if it is vague, repetitious, or contains extraneous information" and "even if it does not include every name, date, and location of the incidents at issue." *Id.* at 93–

94. The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

## III. DISCUSSION

Although MacDougall's Amended Complaint is an improvement over her initial Complaint (or series of complaints), it is still fails to comply with Federal Rule of Civil Procedure 8. The Amended Complaint is comprised of a group of exhibits and forms (or portions of forms) that are put together in a disorganized manner, making it difficult for the Court or Defendants to understand what she is alleging and what her claims are based upon. (Doc. No. 11.) In particular, most of the exhibits and documents contained in the Amended Complaint pertain to acts taken by third parties or involve matters that appear wholly unrelated to the named Defendants, such as MacDougall's car insurance dispute, domestic relations case, and alleged financial or credit card fraud. (*Id.*) And although it is again apparent that MacDougall seeks to raise claims against The Buck Hotel, Brian Rhuling Sr., and Brian Rhuling Jr. based on her termination and other matters that occurred in connection with her employment at The Buck Hotel, the Amended Complaint does not provide a clear narrative of events that identifies what each defendant is alleged to have done and when. While MacDougall's continued failure to comply with Rule 8 is an independent basis to dismiss her complaint, because the Court is able gather from this confused filing that MacDougall intends to bring forth claims for gender discrimination under Title VII, disability discrimination under the ADA, familial status and disability discrimination under the PHRA, and a variety of claims under Pennsylvania tort law, out of an abundance of caution, we will address the merits of those claims

below.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.").

### A. Federal Claims Under the ADA and Title VII

It appears that MacDougall intends to bring claims under Title VII for discrimination based on her sex and under the ADA for discrimination based on her purported disability of ADHD.  (Doc. No. 11-4 at 8–9); *see* 42 U.S.C. § 2000e-2(a) (prohibiting employment discrimination based on gender); *id.* § 12112 (prohibiting employment discrimination based on disability).  As an initial matter, Title VII and the ADA do not provide a cause of action against individual employees, as opposed to the employer (here, The Buck Hotel), so MacDougall cannot sue Brian Rhuling, Sr. and Brian Rhuling, Jr. under these statutes.  *See Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017) ("Title VII and the ADA impose liability only on *employers* . . . .") (emphasis in original); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA."); *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII.").  The Court will therefore construe her ADA and Title VII claims as having been raised against The Buck Hotel only and discuss each in turn below.[4]

#### 1. ADA

The Court turns first to MacDougall's claims for discrimination under the ADA.  The Americans with Disabilities Act of 1990 prohibits covered entities from discriminating against

---

[4] Although MacDougall checked box on the Court's form complaint suggesting she intends to raise retaliation claims under Title VII or the ADA, (Doc. No. 11-4 at 9), even a liberal construction of her pleading does not support any such claims.  To state a claim for retaliation, a plaintiff must plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the

qualified employees based on their disabilities. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020). To state a plausible discrimination claim under the ADA a plaintiff must allege sufficient factual matter to support a reasonable inference that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) she suffered an adverse employment decision as a result of discrimination based upon her disability. *Id.* (citation omitted). "[A]n adverse employment action means simply that the employee suffered 'some harm' to a term or condition of employment—in other words, that the employer treated the employee 'worse' because of a protected characteristic." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (citation omitted).[5] An employer's refusal to make reasonable accommodations for a

---

following elements: (1) she engaged in conduct protected by Title VII [or the ADA]; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) ("[W]e analyze ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII."). Here, MacDougall's claim fails at the first step: she does not allege that she engaged in a protected activity under either of these statutes. Accordingly, any retaliation claims are not plausible. The Court will therefore focus its analysis on MacDougall's employment discrimination claims, as this is the crux of her allegations against The Buck Hotel.

[5] While the Third Circuit previously held that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment," *Komis v. Sec'y of United States Dep't of Lab.*, 918 F.3d 289, 292 (3d Cir. 2019), the Supreme Court recently clarified in the context of a Title VII claim that an employee need not demonstrate that an employment-related harm was significant, serious, substantial, "or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Instead, as noted above, a plaintiff must show only that they suffered "'some harm' to a term or condition of employment." *Peifer*, 106 F.4th at 277 (quoting *Muldrow*, 601 U.S. at 355). Other Courts have applied this same standard to ADA claims like those raised by Plaintiff. *See, e.g.*, *Leon v. Bensalem Twp. Sch. Dist.*, No. CV 23-01374, 2024 WL 3744352, at *5 (E.D. Pa. Aug. 9, 2024) ("Though Courts in this Circuit have not yet had the chance to weigh in, several other Circuit Courts have since applied [the *Muldrow*] standard to adverse employment actions in ADA cases.").

plaintiff's disabilities can qualify as an adverse employment action. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010).

A separate cause of action exists under the ADA where an employer fails "to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To state a claim for a failure to accommodate under the ADA, a plaintiff must allege sufficient facts to support a reasonable inference that: "(1) [s]he was disabled and [her] employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

As noted above, a necessary element of each claim is that the plaintiff be disabled. A plaintiff is disabled within the meaning of the ADA if she (1) has a physical or mental impairment that substantially limits one or more of her major life activities; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman*, 961 F.3d at 245 (citing 42 U.S.C. § 12102(1)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Here, liberally construing the amended complaint, MacDougall appears to bring forth claims under the ADA premised on her alleged diagnosis of ADHD (Doc. No. 11-4 at 9), and an incident in which she was called lazy after returning from surgery when she briefly watched the television while at work (Doc. No. 11-2 at 5). Neither claim is plausible as currently pled.

First, with regard to her claims arising from her ADHD diagnosis, MacDougall has not stated a plausible claim for discrimination or failure to accommodate because she has not

11

adequately alleged that this diagnosis qualifies as a disability within the meaning of the ADA. Indeed, while the Amended Complaint suggests that MacDougall has been diagnosed with ADHD (Doc. No. 11-4 at 9 (MacDougall describing her disability as "ADHD")), it is completely devoid of allegations suggesting that this diagnosis "substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102. Although a plaintiff need not "go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations" at the pleading stage, she still must allege some facts to support an inference that she suffered from a disability within the meaning of the statute. *Fowler*, 578 F.3d at 213; *see also Collins v. Prudential Inv. & Ret. Servs.*, 119 F. App'x 371, 377 n.5 (3d Cir. 2005) ("Merely having an impairment does not make one disabled for purposes of the ADA. Whether a person has a disability under the ADA is an individualized inquiry. An ADA plaintiff needs to demonstrate that the impairment limits a major life activity." (internal quotation marks, citations, and alterations omitted)); *Onely v. Redner's Mkts., Inc.*, Civil Action No. 21-4785, 2022 WL 1773606, at *5 (E.D. Pa. June 1, 2022) ("A complaint based on actual disability . . . need not provide detail about the life activities affected by the alleged disability or about the nature of the plaintiff's substantial limitations. However, it must plausibly suggest that that the plaintiff has substantial limitations due to a disability . . . Plaintiff has not alleged that her conditions restrict her activity at all."); *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint."). MacDougall has not done so here.

Moreover, even assuming ADHD qualifies as a disability under the ADA, MacDougall's claim for disability discrimination fails because she has not alleged that she endured an adverse

employment action as a result of her ADHD diagnosis. As noted above, to state a claim for discrimination under the ADA, a plaintiff must allege that she suffered an adverse employment action "because of" her disability." *Cambria v. Ass'n of Flight Attendants, AFL-CIO*, No. CIV.A.03-CV-5605, 2005 WL 1563343, at *11 (E.D. Pa. June 30, 2005). In other words, a plaintiff must prove a causal relationship between her disability and the alleged adverse employment action. *Id.* Here, while MacDougall was eventually terminated from The Buck Hotel, she has not alleged any facts suggesting this termination was at all related to her ADHD diagnosis. And while a failure to accommodate can be considered an adverse employment action, *Colwell*, 602 F.3d at 504, MacDougall has not alleged any facts suggesting that The Buck Hotel was aware of and failed to accommodate her ADHD diagnosis. She has therefore failed to state a claim for disability discrimination in connection with her ADHD diagnosis.

And to the extent MacDougall intends to bring forward a claim for failure to accommodate premised on her ADHD diagnosis, she has failed to state a claim for much of the same reason discussed above: she has not alleged facts suggesting that The Buck Hotel was aware of her ADHD diagnosis, that she requested a reasonable accommodation for this disability, or that The Buck Hotel, to the extent it was aware, failed to provide reasonable accommodations. *See, e.g.*, *Alvarez v. City of Philadelphia*, No. 23-CV-3570, 2023 WL 6520507, at *3 (E.D. Pa. Oct. 4, 2023) (dismissing ADA claim for failure to accommodate where plaintiff alleged only in conclusory fashion that her employer failed to provide reasonable accommodations for her disability).

Second, MacDougall has also failed to state a claim for discrimination under the ADA related to the incident in which she was called "lazy" by Brian Rhuling Sr. after returning to

work following an unspecified surgery.[6]  (Doc. No. 11-2 at 5 (describing this incident as "discriminatory").)  Even assuming that MacDougall was disabled within the meaning of the ADA following this surgery, she again has not alleged facts suggesting that she endured an adverse employment action because of this disability.  While Brian Rhuling Sr.'s comment was unprofessional and crass, MacDougall has not pled any facts suggesting that it caused "some harm to a term or condition of [her] employment."  *Peifer*, 106 F.4th at 277.  Nor has MacDougall alleged facts suggesting that she requested, or The Buck Hotel failed to provide, reasonable accommodations following her surgery.  Thus, MacDougall has failed to state a claim for discrimination under the ADA in connection with Brian Rhuling Sr.'s comment.

In sum, MacDougall has failed to allege sufficient facts to state a plausible claim for disability discrimination or failure to accommodate under the ADA regarding either her ADHD diagnosis or the incident in which she was called "lazy" by Brian Rhuling Sr.  Her claims under the ADA are therefore dismissed.  *See White v. SP Plus Corp.*, 858 F. App'x 488, 490 & n.1 (3d Cir. 2021) (per curiam) (concluding that plaintiff's amended complaint, which "[made] general, conclusory allegations and require[d] the reader to cobble together the relevant facts from attached documents" and which reflected that plaintiff "took a leave of absence from work due to a hand injury," failed to state an ADA claim).

### 2. Title VII

The Court next addresses MacDougall's claims for gender discrimination under Title VII.  Liberally construing the Amended Complaint, the Court understands MacDougall to be raising

---

[6] The Court does not understand MacDougall to be bringing a separate failure to accommodate claim under the ADA in relation to this incident.  However, even if she had, it would fail because, as set forth above, the Amended Complaint does not contain facts suggesting that MacDougall requested or that The Buck Hotel failed to provide her reasonable accommodations after her surgery.

claims for disparate treatment and hostile work environment.  The Court addresses each below and finds that none of these claims are plausible as pled.

### a. *Disparate Treatment*

The Court turns first to MacDougall's disparate treatment discrimination claims.  To state a claim for employment discrimination under this theory, a plaintiff must show:  (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and, (4) that adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003); *Hamilton v. Norristown State Hosp.*, No. CV 23-4068, 2024 WL 3623521, at *6 (E.D. Pa. Aug. 1, 2024).  As to prong three, an adverse employment action must result in "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354–55.  And as to the fourth prong, "[a]t the motion to dismiss stage . . . a plaintiff can plead this element by presenting sufficient facts to raise a reasonable expectation that discovery will uncover proof that her gender was either a 'motivating' or 'determinative' factor in the employer's adverse employment actions." *Leon*, 2024 WL 3744352, at *4 (quoting *Connelly*, 809 F.3d at 789).

Liberally construing the Amended Complaint, the only factual allegations that could potentially support a gender discrimination claim are MacDougall's termination, that she had a different computer system from the men she worked with, and that she was called a "dumb

blonde" in front of customers.[7]  (Doc. No. 11-2 at 4; Doc. No. 11-3.)   However, upon further review, none of these allegations are sufficient to state a claim.

      First, MacDougall has alleged no facts suggesting that she was terminated on the basis of her gender.  *See Favors v. Sec'y U.S. Dep't of Veterans Affs.*, 695 F. App'x 42, 44 (3d Cir. 2017) (per curiam) (affirming dismissal of Title VII race discrimination claim where plaintiff "included no allegations whatsoever linking his termination to his [membership in a protected class]"); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss.").  Second, as to her allegation that she was called a "dumb blonde" in front of customers, this comment does not constitute an adverse employment action sufficient to support a claim for disparate treatment.  While this comment was, again, highly unprofessional, MacDougall has not alleged any facts suggesting that it caused harm to "an identifiable term or condition of [her] employment."  *Muldrow*, 601 U.S. at 354–55.  Finally, as to her allegation that the computer system she used was different than the "males" she works with, MacDougall has not provided sufficient context as to how her system was different.  And without more information as to how she was treated differently, the

---

[7] In the portion of her Amended Complaint consisting of a form complaint, MacDougall also alleges discrimination in the form of The Buck Hotel's refusal to remove a stalker, to provide her pay stubs or financial records, and to check the camera footage to verify car vandalism. (Doc. No. 11 at 9.)  But MacDougall fails to allege any facts suggesting that Defendant's actions or inactions were based on her gender.  Thus, these allegations cannot support a claim for gender discrimination.

Court cannot determine whether any differences in her computer system constituted an adverse employment action or whether it was based on her gender.

In sum, as currently pled, MacDougall has not stated a claim for disparate treatment.

### b. *Hostile Work Environment*

The Court turns next to MacDougall's claim for hostile work environment. To state a hostile work environment claim under Title VII, a plaintiff must allege that: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotation marks, and citations omitted). As to the second prong, conduct is "severe or pervasive" when it is sufficient "to alter the conditions of [the employee's] employment and create an abusive working environment." *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 214 (3d Cir. 2017) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Because Title VII is not a "general civility code," this standard is "demanding" and will not prohibit "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998); *see also id.* ("Properly applied, [this standard for hostility] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

Here, MacDougall's allegations that she was called a dumb blonde in front of customers and that her computer system is different than her male counterparts do not support a hostile

work environment claim.[8] As an initial matter it is unclear, as discussed above, whether these incidents constituted intentional sex discrimination. But regardless, these two limited incidents, for which MacDougall does not provide much detail or when they occurred, are not sufficiently severe or pervasive to meet the second prong of a *prima facie* case of hostile work environment. *See, e.g.*, *Wiggins v. Universal Prot. Servs. LLC*, No. 22-1491, 2022 WL 4116912, at *3 (3d Cir. Sept. 9, 2022) (per curiam) ("Wiggins did not state a *prima facie* case for a hostile work environment claim, as he did not make factual allegations that could suggest that his workplace was 'permeated with *discriminatory* intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" (emphasis and alterations in original)); *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 250 (3d Cir. 2012) (affirming dismissal of hostile work environment claim where plaintiff's allegations described workplace conflict, were insufficiently severe or pervasive, and were insufficiently linked to his membership in a protected class). Thus, any hostile work environment claim fails.

* * *

In sum, MacDougall has failed to state a claim for gender discrimination, whether viewed as disparate treatment or hostile work environment. Thus, the Court dismisses MacDougall's claims under Title VII.

### B. State Claims

MacDougall's remaining claims, to the extent discernable, all arise under state law, specifically the PHRA and Pennsylvania tort law. The Court will dismiss these claims for lack

---

[8] Here too, the Court focuses on MacDougall's allegations that she has plausibly connected to her gender or sex. *See supra* at 16 n.7.

work environment claim.[8] As an initial matter it is unclear, as discussed above, whether these incidents constituted intentional sex discrimination. But regardless, these two limited incidents, for which MacDougall does not provide much detail or when they occurred, are not sufficiently severe or pervasive to meet the second prong of a *prima facie* case of hostile work environment. *See, e.g.*, *Wiggins v. Universal Prot. Servs. LLC*, No. 22-1491, 2022 WL 4116912, at *3 (3d Cir. Sept. 9, 2022) (per curiam) ("Wiggins did not state a *prima facie* case for a hostile work environment claim, as he did not make factual allegations that could suggest that his workplace was 'permeated with *discriminatory* intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" (emphasis and alterations in original)); *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 250 (3d Cir. 2012) (affirming dismissal of hostile work environment claim where plaintiff's allegations described workplace conflict, were insufficiently severe or pervasive, and were insufficiently linked to his membership in a protected class). Thus, any hostile work environment claim fails.

* * *

In sum, MacDougall has failed to state a claim for gender discrimination, whether viewed as disparate treatment or hostile work environment. Thus, the Court dismisses MacDougall's claims under Title VII.

### B. State Claims

MacDougall's remaining claims, to the extent discernable, all arise under state law, specifically the PHRA and Pennsylvania tort law. The Court will dismiss these claims for lack

---

[8] Here too, the Court focuses on MacDougall's allegations that she has plausibly connected to her gender or sex. *See supra* at 16 n.7.

of jurisdiction.  The only independent basis for jurisdiction would be 28 U.S.C. § 1332(a),[9] which permits district courts to exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  Section 1332(a) requires "complete diversity between all plaintiffs and all defendants," which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 343 (3d Cir. 2011).  A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business.  *See* 28 U.S.C. § 1332(c).  In contrast, "the citizenship of an LLC [or other unincorporated entity] is determined by the citizenship of its members."  *Zambelli*, 592 F.3d at 420.

The Amended Complaint does not allege the parties' citizenship.  However, MacDougall uses Pennsylvania addresses for herself and the Defendants, (Doc. No. 11-4 at 8).  Accordingly, MacDougall has not met her burden of establishing a basis for diversity jurisdiction and the Court will dismiss her state law claims for lack of jurisdiction.  *See Lincoln Ben. Life Co.*, 800

---

[9] If MacDougall had stated a viable claim under federal law, the Court may have had supplemental jurisdiction over these state law claims.  *See* 28 U.S.C. § 1367 (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").  But with all federal claims dismissed at this early stage and given the sporadic nature of MacDougall's Amended Complaint, the Court declines to exercise supplemental jurisdiction over her state law claims.  *See Chapman v. United States*, 480 F. Supp. 3d 601, 613–14 (M.D. Pa. 2020) ("When a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over any remaining state law claims.").

F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence.")

IV. **CONCLUSION**

For the foregoing reasons, the Court will dismiss MacDougall's Amended Complaint for failure to comply with Rule 8, for failure to state a plausible claim, and for lack of subject matter jurisdiction.[10] The dismissal will be without prejudice to MacDougall filing a second amended complaint, which will be her final opportunity to present an organized narrative that clearly sets forth what happened and when it happened in a manner that would support the employment discrimination claims she seeks to bring in this Court. An appropriate Order follows, which provides further instruction about amendment.

---

[10] As noted earlier, on August 19, 2024, two months after filing her Amended Complaint, MacDougall submitted a litany of exhibits to the docket. (Doc. No. 12.) Many of these exhibits are duplicative of documents contained in her Amended Complaint, including documents related to her allegations of identity theft and car insurance fraud. As for new material, MacDougall includes (1) documents related to a car accident she endured (Doc. No. 12 at 12–15; Doc. No. 12-1), (2) a form complaint asserting the same employment discrimination claims addressed above (Doc. No. 12-5 at 4–8), (3) a completed form seeking leave to proceed *in forma pauperis*, even though the Court already granted MacDougall *in forma pauperis* status (Doc. No. 10; Doc. No. 12-5 at 9–14), (4) another accounting of the damages that MacDougall is seeking, which now alleges that The Buck Hotel paid her below minimum wage (Doc. No. 12-2); and (5) a form requesting the appointment of counsel (Doc. No. 12-5 at 15–18). Even if the Court were to consider these belatedly filed exhibits, they are difficult to follow and do not add the factual support necessary to support Plaintiff's claims and thus would not alter the analysis set forth above in which the Court found that MacDougall's Amended Complaint must be dismissed.

Additionally, the Court will deny MacDougall's request for the Court to appoint her counsel that was embedded in these exhibits. Before counsel can be appointed, the Court must be satisfied that MacDougall's claims have merit. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim"); *see also See Mentor v. Hillside Bd. of Educ.*, 428 F. App'x 221, 223–24 (3d Cir. 2011) ("Regardless of whether we review the District Court's order under *Tabron* or § 2000e–5(f)(1), Mentor must show as a threshold matter that her claim had merit."). And as set forth above, the Court finds that MacDougall's Amended Complaint lacks merit and is dismissed it in its entirety. Thus, she is not entitled to have counsel appointed. MacDougall can renew her request for counsel after her Second Amended Complaint is filed and screened for merit.